Flynn Ezra Beckman
(NY Reg. No. 6215545)
flynn.beckman@chrisjen.com
CHRISTENSEN & JENSEN, P.C.
257 East 200 South, Suite 1100
Salt Lake City, Utah 84111
Telephone: (801) 323-5000
Facsimile: (801) 355-3472

*Attorney for Plaintiff*

**IN THE UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| L.Z. and J.Z.,<br><br>Plaintiffs,<br><br>v.<br><br>UNITEDHEALTHCARE SERVICE LLC, UNITED BEHAVIORAL HEALTH, NYU LANGONE HEALTH, and THE NYU LAGONE HEALTH MEDICAL PLAN,<br><br>Defendants. | **COMPLAINT**<br><br>Case No. 1:26-cv-7114<br><br>Judge |

Plaintiffs L.Z. and J.Z. by and through undersigned counsel, hereby complain against Defendants, alleging in the totality and alternatively as follows:

## INTRODUCTION

Plaintiff L.Z. was a participant in an employer-sponsored health plan and enrolled their child, J.Z., as a beneficiary in that plan. J.Z. received three months of mental health treatment at True North Wilderness Programs ("True North"), five weeks of treatment at the Polaris Teen Center ("Polaris"), and more than five months of treatment at the Optimum Performance Institute ("Optimum").

Defendants denied all claims for services provided by True North asserting that "benefit coverage is not available" without further description.

Defendants paid a small portion of the charges incurred for part of the time that J.Z. received treatment at Polaris. Defendants denied all of the remaining claims for treatment received at Polaris, acknowledging that there was no question that J.Z. needed continued intensive services, but wrongly concluding that J.Z. could be treated in a less restrictive setting.

Defendants initially denied all claims submitted by Optimum, claiming the medical records did not match the billed service and that the provider did not respond to a request for additional information. In response to corrected claim information, Defendants denied the claims on the grounds that the provider was not properly licensed as required by state law when no such state licensure was required or even available. Then finally, Defendants denied Plaintiffs' claims for J.Z.'s treatment at Optimum on the grounds that the appeal of the denial of benefits came too late.

This litigation centers around the issue of whether the grounds for the denials were valid.

**PARTIES, JURISDICTION, AND VENUE**

1. This case involves mental health treatment and other confidential medical and mental health information. Using the Plaintiffs' full names would render them identifiable and would intrude upon private health care matters including matters protected by HIPAA.

2. Plaintiffs incorporate herein the medical records and claim-related documents previously provided by them to the Defendants

3. Plaintiffs L.Z. and J.Z. are, and were at all times relevant hereto, residents of New York, NY.

4. L.Z. is J.Z.'s parent.

5. At all times relevant hereto, L.Z. was an employee of NYU Langone Health.

6. Defendant NYU Langone Health consists of NYU Langone Hospitals, NYU Grossman School of Medicine, and NYU Langone Health System.

7. Through L.Z.'s employment, J.Z. was a beneficiary in the NYU Grossman School of Medicine Employee Benefit Plan, which is part of the NYU Langone Health Medical Plan, L.Z.'s employer's health benefits plan (the "Plan").

8. Defendant UnitedHealthcare Service, LLC ("United") is the Plan's Claims Administrator.

9. Based on information and belief, Plaintiffs allege that Defendant United Behavioral Health ("UBH") is a subsidiary of, or shares a common parent company with, United.

10. UBH was designated by NYU Langone Health to be the Plan's "Mental Health/Substance-Related and Addictive Disorders Administrator" and given responsibility for making benefit coverage determinations for mental health and substance use disorder services for the Plan.

11. The Plan is a welfare benefits plan under 29 U.S.C. § 1001 *et. seq.*, the Employee Retirement Income Security Act of 1974 ("ERISA").

12. This lawsuit is brought to obtain an order requiring Defendants to pay or reimburse expenses Plaintiffs incurred during J.Z.'s treatment at True North, Polaris, and Optimum. The remedies Plaintiffs seek under ERISA and the Plan are for benefits due under the terms of the Plan and pursuant to 29 U.S.C. § 1132(a)(1)(B); and, in the alternative, for appropriate equitable relief under 29 U.S.C. § 1132(a)(3) based on Defendants' violation of the

Mental Health Parity and Addiction Equity Act of 2008 (the "MHPAEA"); as well as an award of pre-judgment interest; and an award of fees and costs pursuant to 29 U.S.C. § 1132(g).

13. This Court has jurisdiction over this case under 29 U.S.C. § 1132(e)(1) and 28 U.S.C. § 1331.

14. Venue is appropriate under 29 U.S.C. § 1132(e)(2) and 28 U.S.C. § 1391(c) based on ERISA's provisions regarding nationwide service of process.

## FACTUAL ALLEGATIONS[1]

*Allegations regarding the Plan*

15. NYU Langone Health and United issued a Summary Plan Description booklet effective January 1, 2022 (the "SPD").

16. Upon information and belief, Plaintiffs allege that the SPD constitutes the official summary plan description for the Plan.

17. NYU Langone Health is the Plan Sponsor and Plan Administrator.[2]

18. As the Plan's Claims Administrator, United handles the day-to-day administration of the Plan's coverage through an agreement with NYU Langone Health.[3]

19. The Plan provides benefits for "Covered Health Services" which it defines as:

> [T]hose health services, including services, supplies or Pharmaceutical Products, which the Claims Administrator determines to be:
>
> - Provided for the purpose of preventing, diagnosing or treating Sickness, Injury, Mental Illness, Substance-Related and Addictive Disorder Services or their symptoms.

---

[1] Unless otherwise noted, the information supporting these allegations is contained within the Administrative Record. The Administrative Record is incorporated herein by reference.
[2] SPD at 133.
[3] SPD at 133.

- Consistent with nationally recognized scientific evidence as available, and prevailing medical standards and clinical guidelines as described below.
- Not provided for the convenience of the Covered Person, Physician, facility or any other person.
- Included in Section 5, Plan Highlights and Section 6, Additional Coverage Details.
- Provided to a Covered Person who meets the Plan's eligibility requirements, as described under Eligibility in Section 2, Introduction.
- Not identified in Section 8, Exclusions and Limitations.

In applying the above definition, "scientific evidence" and "prevailing medical standards" have the following meanings:

- "Scientific evidence" means the results of controlled Clinical Trials or other studies published in peer-reviewed, medical literature generally recognized by the relevant medical specialty community.
- "Prevailing medical standards and clinical guidelines" means nationally recognized professional standards of care including, but not limited to, national consensus statements, nationally recognized clinical guidelines, and national specialty society guidelines.

The Claims Administrator maintains clinical protocols that describe the scientific evidence, prevailing medical standards and clinical guidelines supporting its determinations regarding specific services. You can access these clinical protocols (as revised from time to time) on www.myuhc.com or by calling the number on the back of your ID card.[4]

20. The Plan defines "Mental Health Services" as "Covered Health Services for the diagnosis and treatment of Mental Illnesses listed in the current *Diagnostic and Statistical Manual of the American Psychiatric Association*."[5]

21. The Plan provides the following benefits for Mental Health Services:

Mental Health Services include those received on an inpatient or outpatient basis in a Hospital and an Alternate Facility or in a provider's office. All services must be provided by or under the direction of a properly qualified behavioral health provider.

---

[4] SPD at 122.
[5] SPD at 128.

> Benefits include the following levels of care:
>
> ■ Inpatient treatment.
> ■ Residential Treatment.
> ■ Partial Hospitalization/Day Treatment.
> ■ Intensive Outpatient Treatment.
> ■ Outpatient treatment.
>
> Services include the following:
>
> ■ Diagnostic evaluations, assessment and treatment planning.
> ■ Treatment and/or procedures.
> ■ Medication management and other associated treatments.
> ■ Individual, family, and group therapy.
> ■ Provider-based case management services.
> ■ Crisis intervention.
>
> The Mental Health/Substance-Related and Addictive Disorders Administrator provides administrative services for all levels of care.[6]

22. An "Alternate Facility" is defined by the Plan as:

> [A] health care facility that is not a Hospital and that provides one or more of the following services on an outpatient basis, as permitted by law:
>
> ■ Surgical services.
> ■ Emergency Health Services.
> ■ Rehabilitative, laboratory, diagnostic or therapeutic services.
>
> An Alternate Facility may also provide Mental Health Services or Substance-Related and Addictive Disorder Services on an outpatient basis or inpatient basis (for example a Residential Treatment facility).[7]

23. The Plan provides benefits for "Residential Treatment" for Mental Health Services, described as follows:

> Residential Treatment - treatment in a facility which provides Mental Health Services or Substance-Related and Addictive Disorders Services treatment. The facility meets all of the following requirements:

---

[6] SPD at 46-47.
[7] SPD at 120.

- It is established and operated in accordance with applicable state law for Residential Treatment programs.
- It provides a program of treatment under the active participation and direction of a Physician and approved by the Mental Health/Substance-Related and Addictive Disorders Services Administrator.
- It has or maintains a written, specific and detailed treatment program requiring full-time residence and full-time participation by the patient.
- It provides at least the following basic services in a 24-hour per day, structured milieu:

  - Room and board.
  - Evaluation and diagnosis.
  - Counseling.
  - Referral and orientation to specialized community resources.

A Residential Treatment facility that qualifies as a Hospital is considered a Hospital.[8]

24. As participants of the Plan, Plaintiffs had the ability to receive health care services from providers and facilities within United's Network, or from "non-Network" providers or facilities which are providers and facilities that are outside United's network.[9]

25. The Plan generally pays benefits at a lower level when medical care is obtained from non-Network providers and facilities.[10]

26. According to the terms of the Plan, the Plan will pay benefits for inpatient Mental Health Services from non-Network Providers at "50% after you meet the $500 Non-Network Deductible."[11]

---

[8] SPD at 130.
[9] SPD at 8.
[10] SPD at 9.
[11] SPD at 25.

27. The Plan includes an "Out-of-Pocket Maximum" which is the most a Covered Person will pay per calendar year for Covered Health Services, so that if a Covered Person's eligible out-of-pocket expenses in a calendar year exceed the annual maximum, the Plan pays 100% of Eligible Expenses for Covered Health Services through the end of the calendar year.[12]

28. According to the terms of the Plan, the Annual Out-of-Pocket Maximum that a covered person will pay for non-network covered health services is $10,000.[13]

29. According to the terms of the Plan, the Plan will pay for inpatient mental health services from non-network providers at "50% after you meet the $500 Non-Network Deductible."[14]

*Claims for J.Z.'s treatment at True North.*

30. In November, 2020, J.Z. revealed they were having suicidal thoughts and started seeing a psychologist.

31. In December, 2020, J.Z. went to the Bellevue Hospital psychiatric emergency department for intensive suicidal thoughts with a plan where J.Z. was diagnosed with major depression.

32. Throughout 2021 and early 2022, J.Z. sought care from various psychologists, counselors and other therapists without success, and J.Z.'s mental health issues continued to get worse.

---

[12] SPD at 14.
[13] SPD at 19.
[14] SPD at 25.

33. J.Z. was diagnosed with major depressive disorder, recurrent, moderate, and generalized anxiety disorder under the criteria described in *Diagnostic and Statistical Manual of the American Psychiatric Association*.

34. Upon the recommendation of J.Z.'s school counselor, J.Z. received treatment for these disorders at True North from May 6, 2022 to August 24, 2022.

35. True North is licensed by the state of Vermont as a residential treatment program that provides intermediate behavioral health services to adolescents.

36. True North offers mental health treatment programs that are less intensive than acute hospitalization but more intensive than outpatient therapy, which qualified it as an intermediate or sub-acute behavioral health facility.

37. J.Z. benefited from the intensive mental health treatment received at True North and had improvements in each diagnosed condition from the services provided by True North.

38. True North charged $63,245.00 for the services it provided to J.Z. and submitted these claims to United.

39. United sent multiple Explanation of Benefits ("EOB") forms, each of which contained one of two reasons for denying the claims.

40. United denied some of True North's claims with the explanation: "AY – THE PROCEDURE CODE SUBMITTED IS NOT ELIGIBLE FOR PAYMENT. THEREFORE, NO BENEFITS ARE PAYABLE FOR THIS SERVICE."

41. United denied True North's remaining claims, giving the following reason:

> B6 – BENEFITS FOR THIS SERVICE ARE DENIED. WE SENT A LETTER TO THE PROVIDER ASKING FOR ADDITIONAL INFORMATION. OUR RECORDS DO NOT REFLECT RECEIPT OF REQUESTED

> INFORMATION. PLEASE DISREGARD THIS NOTICE IF YOU HAVE ALREADY SUBMITTED THE INFORMATION.

42. In a letter dated April 27, 2023, L.Z. submitted a level one member appeal of United's denials of the claims submitted by True North.

43. The appeal consisted of more than 1,400 pages of materials, including medical records and other documents supporting the arguments and representations made in the appeal.

44. In the appeal, among other things, L.Z.:

   a. Noted that the Plan is subject to ERISA, and as such, United was obligated to provide Plaintiffs with certain rights with review of the appeal, including a review that considers all the information submitted by Plaintiffs relating to the claim;

   b. Requested United assign medical or vocational experts who were knowledgeable about generally accepted standards and clinical best practices for residential outdoor behavioral health programs in the state of Vermont, where True North is located;

   c. Pointed out that United was required to provide Plaintiffs with a response that was clear, specifically stated the reasons for the determination, referenced the Plan language on which United's decision was based, and explained what other information Plaintiffs could provide to perfect their claims;

   d. Noted that United had denied some of the claims on the grounds that it had requested additional information from True North that had not been provided, but L.Z. responded that United had received copies of J.Z.'s

records from True North on two occasions, and supported this with copies of the UPS tracking results;

e. Quoted the SPD's definition of "Covered Health Services" and described how J.Z.'s treatment at True North satisfied each requirement in the definition of Covered Health Services;

f. Expressed a concern that the Plan's language, on its face, may violate the MHPAEA by imposing an impermissible nonquantitative treatment limitation ("NQTL") based on facility type or provider specialty because the Plan contained an exclusion for "Adventure-based therapy, wilderness therapy, outdoor therapy, or similar programs" which, as a practical matter, categorically excluded all outdoor behavioral health programs, and cited case law where a similar exclusion was found to be an impermissible facial facility type NQTL;

g. Requested United conduct a comparative parity analysis to determine whether or not the Plan was truly being administered in compliance with the MHPAEA and provide L.Z. with physical copies of any documentation used in the analysis so that Plaintiffs could independently conduct a comparative parity analysis and appropriate plead their case.

45. In a letter dated June 2, 2023, UBH sent Plaintiffs a letter denying the level one appeal with the following explanation:

> Based on my review of the request, including any supporting documentation which may have been submitted with your appeal letter, I have determined that the submitted claim(s) for date(s) of service 05/26/2022 through 08/24/2022 have not been approved for payment. As per my review, the claim processed correctly

> as per United Behavioral Health (UBH) standard processing guidelines. The claim has been correctly paid with out of network member's benefits. No further payment will be initiated, therefore upheld.
>
> The purpose of this letter is to inform you that based on my review of the available information, I have determined that benefit coverage is not available for your admission to True North Wilderness Programs for the following date(s) of service: 05/26/2022 through 08/24/2022.

46. UBH's June 2, 2023 letter ignored L.Z.'s request that UBH comply with ERISA requirements to provide a response to the appeal that was clear, specifically stated the reasons for the determination, and referenced the Plan language on which UBH's decision was based.

47. UBH's June 2, 2023 letter failed to acknowledge or address L.Z.'s concerns that United was imposing treatment limitations of the kind prohibited by the MHPAEA, or to conduct a parity analysis to determine whether or not the Plan was being administered in compliance with MHPAEA, or to provide Plaintiffs with the results of this analysis or with copies of all documentation used in this analysis so that Plaintiffs could conduct their own parity analysis, which information Plaintiffs were entitled to receive under the MHPAEA.

48. In a letter dated July 25, 2023, L.Z. submitted a level two member appeal.

49. In the appeal, L.Z. expressed a concern that UBH's response to the level one appeal violated ERISA in several ways and contained a number of errors.

50. In the appeal, L.Z. noted that UBH's denial letter erroneously indicated that the level of care was for outpatient mental health treatment, when the level one appeal specified that the services at issue were for residential intermediate outdoor behavioral health services and were billed using the appropriate code.

51. In the appeal, L.Z. pointed out that UBH's denial letter did not indicate which guideline UBH used, and which components of the guideline the outdoor behavioral health services provided by True North purportedly did not meet.

52. In the appeal, L.Z. noted that UBH failed to issue a meaningful response to the arguments and evidence presented in the level one appeal, including concerns that United may be imposing a facial facility type NQTL in violation of the MHPAEA, as well as evidence and arguments that L.Z. made in support of coverage under the Plan.

53. L.Z. further pointed out that the level one appeal included a request for evidence that the Plan was being administered in accordance with the MHPAEA by conducting a parity analysis and providing this information to L.Z., and UBH's failure to do this and provide plan documents deprived L.Z. of the opportunity to conduct an independent parity analysis.

54. Due to the numerous errors and omissions in UBH's denial, L.Z. expressed a concern in the appeal that UBH's reviewer was not properly qualified, and L.Z. again requested that the case be assigned to a reviewer who is properly qualified and experienced to provide meaningful responses to the arguments and evidence presented in the appeal.

55. L.Z. included with the appeal a letter from J.Z.'s school counselor that confirmed the severity of J.Z.'s mental health struggles and the recommendation that J.Z. receive intensive care in an intermediate therapeutic setting such as True North.

56. UBH responded to the level two appeal with a letter dated August 24, 2023, purportedly from a different UBH employee, but containing essentially a verbatim copy of the prior denial letter:

> As requested, an appeal/grievance review was completed on a request we received on 08/03/2023. This review included an examination of the following

> information: case. After fully investigating ae appeal/grievance, I as an UBH employee, have determined that benefit coverage is not available for the following reason(s):
>
> Based on my review of the request, including any supporting documentation which may have been submitted with your appeal letter, I have determined that the submitted claim(s) for date(s) of service 05/26/2022 through 08/24/2022 have not been approved for payment. As per my review, the claim was appropriately processed/paid correctly as per the united behavioral health (UBH) guidelines.
>
> The purpose of this letter is to inform you that based on my review of the available information; I have determined that benefit coverage is not available for your admission to True North Wilderness Programs for the following date(s) of service: 05/26/2022 through 08/24/2022.

57. In the level two appeal, L.Z. noted that UBH had apparel failed to meet its obligations under ERISA to ensure that the Plan is fairly administered, and rather than addressing and correcting these deficiencies, UBH simply repeated them in its response to the level two appeal, showing that UBH did not conduct a full, fair or thorough review of the level two appeal.

58. UBH's denial letter did not provide any specific reasons for the denial or cite any Plan language that formed the basis for the denial as required by ERISA.

59. UBH's denial letter again failed to respond to L.Z.'s concerns that UBH was imposing a facial facility type NQTL in violation of the MHPAEA, or acknowledge L.Z.'s arguments and evidence that coverage was available under the Plan, or to provide L.Z. with evidence that the Plan was being administered in accordance with the MHPAEA along with supporting documentation.

60. Defendants' complete denial of Plaintiffs' claim for benefits related to J.Z.'s treatment at True North was wrongful under the terms of the Plan, and the Defendants failed to conduct a full and fair review of their denial.

61. Defendants also imposed NQTLS on Plaintiffs' claims for J.Z.'s treatment at True North in violation of the MHPAEA.

*Claims for J.Z.'s treatment at Polaris*

62. After completing the program at True North, J.Z. returned home and lived with L.Z., but J.Z. continued to struggle with mental health issues, including depression, anxiety, and suicidal thoughts.

63. In September, 2022, J.Z. posted content on social media indicating that J.Z. was experiencing suicidal ideation and making a plan.

64. In response to the social media posting, J.Z.'s school sent J.Z. to Connecticut Children's Hospital Emergency Room where J.Z. remained for two days before being transferred directly to Polaris.

65. J.Z. received intensive residential mental health treatment at Polaris from October 4, 2022 to January 15, 2022 for severe symptoms related to the following diagnosed disorders: F33.2 Major depressive disorder, Recurrent episode, Severe; F41.1 Generalized anxiety disorder; F43.9 Unspecified trauma- and stressor-related disorder with additional concerns of an Obsessive-Compulsive Disorder.

66. Polaris was a residential treatment center that was licensed by the state of California to provide intermediate behavioral health services to adolescents and young adults.

67. The mental health treatment programs Polaris provided were less intensive than acute hospitalization but more intensive than outpatient therapy, which qualified it as an intermediate behavioral health facility.

68. J.Z. benefited from the intensive mental health treatment received at Polaris and had improvements in each diagnosed condition from the services provided by Polaris.

69. Polaris submitted claims on Plaintiffs' behalf for the services that it provided to J.Z.

70. Ultimately, United paid a portion of the charges incurred for services J.Z. received at Polaris from October 4, 2022 through November 8, 2022. United, however, entirely denied the claims for services Polaris provided to J.Z. from November 9, 2022 to December 15, 2022.

71. After UBH denied the claims for services, Polaris submitted an urgent level one appeal of the denial on Plaintiffs' behalf on November 17, 2022.

72. UBH sent a letter dated November 18, 2022, denying benefit coverage for the following reasons:

> We've upheld the noncoverage of Mental Health Residential as of 11/09/2022.
> In your child's case:
> Your child was being treated for depression and anxiety.
> Your request was reviewed. We have we reviewed [sic] your child's clinical notes. We have upheld the noncoverage of Mental Health Residential because:
> • Your child does not need the 24-hour care provided in a residential setting.
> • Your child has no mental health issues that need treatment in this setting
> • Your child is motivated for change
> • It does not seem your child will get better with more treatment in this setting.
> Based on the application of the American Association of Community Psychiatrists CALOCUS-CASII Child and Adolescent Level of Care/Service Intensity Utilization System (CALOCUS-CASII), which is applicable for the mental health residential level of care, mental health partial hospital services are indicated instead of the mental health residential services requested.

73. Polaris charged $148,000 for the services it provided to J.Z. from November 9, 2022 through December 15, 2022, which claims were denied by UBH.

74. On or about September 5, 2023, L.Z. submitted a level two member appeal review of UBS's benefit denials of the claims submitted by Polaris on Plaintiffs' behalf.

75. The appeal consisted of more than 1,200 pages of materials, including medical records and other documents supporting the arguments and representations made in the appeal.

76. In the appeal, among other things, L.Z.:

a. Noted that the Plan is subject to ERISA, and as such, UBH was obligated to provide Plaintiffs with certain rights with review of the appeal, including a review that considers all information submitted by Plaintiffs relating to the claim;

b. Requested UBH assign a reviewer who was board certified in child and adolescent psychiatry, and has experience treating adolescents with major depressive disorder, recurrent, severe; generalized anxiety disorder, personal history of adult psychological abuse, and other high-risk behaviors in an intermediate residential setting.;

c. Pointed out that UBH was required to provide Plaintiffs with a response that was clear, specifically stated the reasons for the determination, referenced the Plan language on which UBH's decision was based, and explained what other information Plaintiffs could provide to perfect their claims;

d. Noted that UBH's denial letter based its medical necessity determination on the Child and Adolescent Level of Care/Service Intensity Utilization System (CALOCUS-CASII), which criteria were not included in the ERISA documents L.Z. received from UBH, and UBS's level one denial did not

describe or include the six different dimensions for evaluating a patient's condition so it was unclear why the reviewer determined that J.Z.'s treatment at Polaris was not medically necessary;

e. Requested the next reviewer's CALOCUS-CASII composite score, sub-scores in the six dimensions, and clinical rationale detailing how each reviewer arrived at the sub-score assigned in each dimension – including clinical information used in the process;

f. Cited examples from UBH's case notes that appeared to show that UBH had been trying to deny J.Z.'s care the entire time J.Z. was receiving treatment at Polaris;

g. Expressed a concern that UBH denied J.Z.'s treatment based on emphasis on acuity (as applied "acute medical management standards NQTL"), shortened length of stay (as-applied "other criteria that limit the scope and duration of benefits"), and probability of improvement (as-applied "medical management standards NQTL," and as-applied "other criteria that limit the scope and duration of benefits") in violation of the MHPAEA;

h. Requested UBH conduct a comparative parity analysis to determine whether or not the Plan was truly being administered in compliance with the MHPAEA and provide L.Z. with physical copies of any documentation used in the analysis so that Plaintiffs could independently conduct a comparative parity analysis and appropriately plead their case

i. Provided a detailed history of J.Z.'s behavioral issues and treatment to show that the treatment J.Z. received at Polaris was medically necessary;

j. Provided three letters from J.Z.'s treating mental health providers opining that the residential treatment that J.Z. received at Polaris was medically necessary.

77. In a letter dated October 3, 2023, a UBH employee responded to the level two member appeal by notifying Plaintiffs that she had "determined that benefit coverage is not available for the following reasons:"

> We have denied coverage for mental health residential, where you live at the facility and get 24 hour care for your condition, as of 11/09/2022.
>
> You were being treated for problems with your moods and anxiety.
>
> Your Request was reviewed. We have denied the medical services requested because we reviewed your clinical case notes.
>
> The criteria were not met because: Your mood was better. You were willing and able to participate in treatment. Your behavior was safe and predictable. You had no problems to take care of daily needs. Your thinking was clear. You did not have any medical problems or other issues that were interfering with your treatment. You had supportive family.
>
> The Guideline/Policy/Criteria used for the decision is: The American Association of Community Psychiatrists (CALOCUS-CASII) Child and Adolescent Level of Care/Service Intensity Utilization System-Child and Adolescent Service Intensity Instrument (CALOCUS-CASII) for Level 5, which is applicable for the mental health residential level of care.

78. In response to the October 3, 2023 denial letter, L.Z. submitted an independent review organization request on or about October 20, 2023.

79. In this request, L.Z. expressed concerns that UBH was violating ERISA by failing to meet its obligations in reviewing and responding to the level two appeal, including correctly pointing out the following, among other things:

a. UBH failed to provide clear evidence that the Plan was being administered in accordance with the MHPAEA by conducting a parity analysis and providing Plaintiffs with this information as L.Z. had requested;

b. UBH's denial letter again cited CALOCUS-CASII as the basis for denying benefits but again failed to reference which specific requirements from this guideline were not met, and further failed to provide the specific clinical rational behind the scores given to J.Z. for the treatment at Polaris;

c. UBH did not provide a meaningful response to the arguments and evidence in the level two appeal, including concerns that UBH may be imposing several NQTLs in violation of the MHPAEA, or the arguments made and evidence presented in support of coverage under the Plan.

80. In this appeal, L.Z. expressed a concern that UBH processed the claims for the treatment that J.Z. received at Polaris from October 4, 2022 through November 8, 2022 incorrectly because of a discrepancy in how much UBH paid and the language in the SPD, resulting in an underpayment of benefits, and requested detailed information about how these amounts were calculated and the shortfall to be paid.

81. In a decision dated January 12, 2024, the external reviewer opined that the denial was appropriate, but not because J.Z. did not need intensive mental health care. Rather, the external reviewer provided a CALOCUS-CASII total score for J.Z. with minimal discussion and

incorrectly concluded that J.Z.'s score indicated a need for partial hospitalization program level of care, one level below the residential treatment care that Plaintiffs had demonstrated that J.Z. needed.

82. In providing this flawed analysis, the external reviewer was not upholding any specific analysis that UBH had undertaken regarding the level of care appropriate for J.Z. in UBH's responses to Plaintiffs' level one and two appeals.

83. Indeed, UBH's rationale consisted of unscientific, vague, unsourced assertions like "your mood was better" and "your thinking was clear," which courts across the country have found do not justify a denial of benefits based on a person purportedly receiving too high of a level of care.

84. Rather than uphold any actual analysis or guideline scoring by UBH, the external review undertook its own, largely unexplained scoring. That analysis gave no explanation as to what any purported problems it had identified with Plaintiffs' analysis which had correctly resulted in a level of care one level higher than the external reviewer's asserted level of care.

*Claims for J.Z.'s treatment at Optimum*

85. While J.Z. experienced significant improvement in each diagnosed condition from the treatment received at Polaris, at the conclusion of this treatment, J.Z.'s therapist recommended that J.Z. receive continuing follow-up treatment at a long-term treatment center.

86. On January 4, 2023, J.Z. was admitted to Optimum, an intermediate behavioral health residential treatment facility in Woodland Hills, California, where J.Z. continued treatment through July 27, 2023.

87. Optimum is a residential treatment center that provides mental health treatment programs that are less intensive than acute hospitalization but more intensive than outpatient therapy, which qualifies it as an intermediate behavioral health facility.

88. J.Z. benefited from the intensive mental health treatment received at Optimum and had improvements in each diagnosed condition from the services provided by Optimum.

89. Optimum submitted claims to United for the services that it provided to J.Z. on Plaintiffs' behalf, which claims amounted to about $326,975.

90. United sent an EOB dated June 7, 2024 which denied all of the claims submitted by Optimum, as follows:

a. United denied the claims for dates 1/4/2023 to 1/13/2023 with claim processing code "B4 - BENEFITS FOR THIS SERVICE ARE DENIED. THE MEDICAL RECORDS SUBMITTED DO NOT MATCH THE BILLED SERVICE. THE PROVIDER MUST SUBMIT A CORRECTED CLAIM WITH THE ACTUAL SERVICE PROVIDED."

b. United denied the remaining claims with claim processing code "B6 - BENEFITS FOR THIS SERVICE ARE DENIED. WE SENT A LETTER TO THE PROVIDER ASKING FOR ADDITIONAL INFORMATION. OUR RECORDS DO NOT REFLECT RECEIPT OF REQUESTED INFORMATION. PLEASE DISREGARD THIS NOTICE IF YOU HAVE ALREADY SUBMITTED THE INFORMATION."

91. In a letter dated June 12, 2026, L.Z. submitted a level one member appeal of United's denials of the claims submitted by Optimum on Plaintiffs' behalf.

92. The appeal consisted of more than 1,450 pages of materials, including medical records and other documents supporting the arguments and representations made in the appeal.

93. In the appeal, among other things, L.Z.:

a. Provided United with the requested corrected claims for all dates of services which were corrected to reflect the residential treatment level of care;

b. Noted that the Plan is subject to ERISA, and as such, United was obligated to provide Plaintiffs with certain rights with review of the appeal, including a review that considers all the information submitted by Plaintiffs relating to the claim and the specific reasons for the adverse determination including any specific Plan provisions, medical criteria, and other documents utilized in making the determination;

c. If United did not pay the claims based on the information presented with the appeal, requested copies of all documents under which the Plan is operated including all governing Plan document, the summary plan description, insurance policies in place for the benefits L.Z. was seeking, any administrative services agreements, any reports or opinions provided to United from any professional, and the names, qualifications and healthcare claim denial rates of all individuals who reviewed this claim or with whom United consulted about this claim.

94. In a letter dated July 16, 2025, UBH sent Plaintiffs a letter denying the level one appeal with the following explanation:

> On 06/17/2025 United Behavioral Health (UBH) received a request from your provider for an appeal review of a non-coverage determination issued on 06/13/2024 for services provided by INNERCHANGE-OPI [*i.e.*, Optimum].
>
> As outlined in the non-coverage determination letter sent to you dated 06/13/2024, your have up to 180 days from the date you received the letter to request appeal/grievance review. We regret to inform you that UBH is unable to process the request for an appeal review, as the request was not received within the 180 day period as outlined in the enclosed Member Appeal/Grievance Rights and Instructions.

95. On or about September 8, 2025, L.Z. submitted a level two member appeal disputing the adverse determination of benefits, because the claims for Optimum were originally incorrectly billed as a partial hospitalization program but were later correctly billed as a residential treatment center, so denying the claims on the basis that the original claims were untimely was inappropriate.

96. In the appeal, L.Z. also argued that the Plan's benefits for non-network providers that are not preauthorized are subject to a $400 reduction, not the 100% penalty applied by United.

97. In the appeal, L.Z. again reminded United of the rights ERISA confers on beneficiaries throughout the appeal process.

98. In the appeal, L.Z. again explained that Optimum is an accredited intermediate residential treatment program, not a partial hospitalization program, and that United's reviewers have failed to recognize this distinction and instead denied J.Z.'s treatment based on criteria for the wrong level of care.

99. In this appeal, L.Z. again requested copies of all documents under which the Plan is operated including all governing Plan document, the summary plan description, insurance policies in place for the benefits L.Z. was seeking, any administrative services agreements, any

reports or opinions provided to United from any professional, and the names, qualifications and healthcare claim denial rates of all individuals who reviewed this claim or with whom United consulted about this claim, if United did not pay the claims based on the information presented with the appeal.

100. UBH sent a letter to J.Z. dated November 18, 2025, stating that it had determined that benefit coverage was not available for the following reason(s):

> We have upheld the denial of coverage of the Residential Treatment at Optimum Performance Institute starting January 4, 2023.
>
> Why did we deny your request?
> The provider was not properly licensed, as required by state law to render the requested service.
> Services provided by a non-licensed provider are excluded from benefit coverage based on your plan.

101. UBH sent a letter to J.Z. that was addressed to Optimum dated November 19, 2025, with a verbatim explanation as was given in the November 18, 2025 letter, but also included an additional reason: "There were no clinical reasons provided to cover services for out of network out of state provider. You could have been treated by licensed in-network providers in your home area."

102. UBH's bases for denial were not correct.

103. On or about February 2, 2026, L.Z. requested a final review of United's November 19, 2025 letter denying the claims submitted by Optimum on Plaintiff's behalf.

104. In the final review request, among other things, L.Z.:

a. Argued that since UBH gave new reasons for its denial in its November 19, 2025 letter, L.Z. was entitled to another review and have L.Z.'s concerns placed on the administrative record and addressed;

b. Argued that the mental health services Optimum provided to J.Z. satisfied the Plan's definitions of "Covered Health Services," "Eligible Expense," and "Residential Treatment;"

c. Attached a letter from Optimum's Utilization Review Director that reported that most states, including California, do not have licensed adult residential treatment facilities so that Optimum was operating within applicable state law;

d. Again, reported that Optimum was, at the relevant times, accredited by the national agency of The Joint Commission;

e. Expressed a concern that United may have applied treatment limitations of the kind prohibited by MHPAEA, and provided arguments and evidence that supported that concern;

f. Because of the apparent MHPAEA violations, requested that the review of this appeal include conducting a comparative parity analysis to determine whether or not the Plan was being administered in compliance with the MHPAEA, and to provide L.Z. with physical copies of any and all documentation used so that L.Z. could independently conduct a comparative parity analysis.

105. UBH sent Plaintiffs a letter dated April 10, 2026, denying further review with the following explanation:

> On 03/13/2026 United Behavioral Health (UBH) received a request from your provider for an appeal review of an adverse benefit determination issued on 11/19/2025 for services provided by Optimum Performance Institute.
>
> As outlined in the appeal review determination letter sent to you dated 11/19/2025, you have up to 60 days from the date you received the letter to

> request appeal/grievance review. We regret to inform you that UBH is unable to process the request for an appeal review, as the request was not received within the 60 day period as outlined in the enclosed Member Appeal/Grievance Rights and Instructions.

106. As set forth above, Plaintiffs exhausted their pre-litigation appeal obligations under the terms of the Plan and ERISA for each of their claims for J.Z.'s treatment at True North, Polaris, and Optimum.

107. After receiving the denials, litigation was Plaintiffs' only option to enforce their right to benefits owing their claims for J.Z.'s treatment at True North, Polaris, and Optimum under the Plan and seek reimbursement of expenses under the terms of the Plan (as written or as reformed or required by MHPAEA), and/or under the MHPAEA amendments to ERISA.

108. Plaintiffs thereafter retained the undersigned to pursue their rights and remedies under ERISA.

109. The remedies Plaintiffs seek herein are for the benefits due and pursuant to 29 U.S.C. § 1132(a)(1)(B) and, in the alternative, for appropriate equitable relief under 29 U.S.C. § 1132(a)(3) based on the Defendants' violation of the Mental Health Parity and Addiction Equity Act of 2008, as well as pre-judgment interest, recoverable fees under 29 U.S.C. § 1132(g), and an award of costs and expenses under 29 U.S.C. § 1132(g) and other applicable law.

110. Plaintiffs do not seek double recovery.

**FIRST CAUSE OF ACTION**
**(Claim for Recovery of Benefits Under 29 U.S.C. § 1132(a)(1)(B))**

111. All allegations of this Complaint are incorporated here as though fully set forth herein.

112. ERISA imposes higher-than-marketplace quality standards on insurers and plan administrators. It sets forth a special standard of care upon plan fiduciaries such as Defendants, acting as agent of the Plan, to "discharge [its] duties in respect to claims processing solely in the interests of the participants and beneficiaries" of the Plan. 29 U.S.C. § 1104(a)(1).

113. Defendants wrongly excluded coverage for J.Z.'s treatment at True North, Polaris, and Optimum in violation of the terms of the Plan, which promise benefits to employees and their dependents for medically necessary treatment of mental health disorders.

114. ERISA also underscores the particular importance of accurate claims processing and evaluation by requiring that administrators provide a "full and fair review" of claim denials and to engage in a meaningful dialogue with Plaintiff in the pre-litigation appeal process.

115. Each of Defendants' denial letters and rejection of the arguments and evidence offered in Plaintiffs' appeals for the denials of J.Z.'s care at True North, Polaris, and Optimum demonstrate the absence of a meaningful analysis of Plaintiffs' appeals. Among other things, Defendants did not engage with or respond to the issues presented in the appeals and did not meaningfully address the arguments or concerns raised during the appeal process.

116. Defendants breached their fiduciary duties to Plaintiffs when they failed to comply with their obligations under 29 U.S.C. § 1104 and 29 U.S.C. § 1133 to act solely in J.Z.'s interest and for the exclusive purpose of providing benefits to ERISA participants and beneficiaries, to produce copies of relevant documents and information to claimants upon request, and to provide a full and fair review of J.Z.'s claims for each of True North, Polaris, and Optimum.

117. The actions of Defendants in denying payment for J.Z.'s treatment at True North, Polaris, and Optimum are a violation of the terms of the Plan, as written and/or as reformed as required or permitted under ERISA.

**SECOND CAUSE OF ACTION**
**(Violation of the Mental Health Parity and Addiction Equity Act (29 U.S.C. § 1132(a)(3))**

118. All allegations of this Complaint are incorporated here as though fully set forth herein.

119. The MHPAEA is incorporated into ERISA and is enforceable by ERISA participants and beneficiaries as a requirement of both ERISA and the MHPAEA. The obligation to comply with both ERISA and the MHPAEA is part of Defendants' fiduciary duties.

120. Generally speaking, the MHPAEA requires ERISA plans to provide no less generous coverage for treatment of mental health and substance use disorders than they provide for treatment of medical/surgical disorders.

121. The MHPAEA prohibits ERISA plans from imposing treatment limitations on mental health or substance use disorder benefits that are more restrictive than the predominant treatment limitations applied to substantially all medical/surgical benefits and makes illegal separate treatment limitations that are applicable only to mental health or substance use disorder benefits. 29 U.S.C. § 1185a(a)(3)(A)(ii).

122. Impermissible nonquantitative treatment limitations (NQTLs) under the MHPAEA include, but are not limited to, restrictions based on geographic location, facility type, provider specialty, or other criteria that limit the scope or duration of benefits for mental health or substance use disorder treatment. 29 C.F.R. § 2590.712(c)(4)(ii).

123. As described in more detail above and in the referenced appeals for True North, Polaris, and Optimum, Defendants have denied benefits for mental health treatment by applying various as-applied NQTLs, including, among other things: emphasis on acuity (as applied "acute medical management standards NQTL"); shortened length of stay (as-applied "other criteria that limit the scope and duration of benefits NQTL"); probability of improvement (as-applied "medical management standards NQTL,"); and as-applied "other criteria that limit the scope and duration of benefits" NQTL).

124. In their denials, Defendants also appear to have imposed a facial facility type NQTL in that there were inequitable requirements based on facility type or "other criteria" that limited the scope or duration of benefits (facial "other criteria NQTL").

125. Upon information and belief, Defendants' denial of coverage violated the MHPAEA in application or effect based on applications of the above-mentioned NQTLs. Because Defendants declined to produce the requested documents and materials requested by Plaintiffs, further discovery is needed to resolve this aspect of Plaintiffs' claims.

126. Defendants are in violation of 29 C.F.R. § 2590.712(c)(4)(i) because the terms of the Plan, as written or in operation, use processes, strategies, standards, or other factors to limit coverage for mental health or substance use disorder treatment in a way that is inconsistent with, and more stringently applied to, the processes, strategies, standards, or other factors used to limit coverage for medical/surgical treatment in the same classification.

127. Plaintiffs expressly requested Defendants perform a MHPAEA analysis of the Plan. Plaintiffs expressed serious concern that Defendants were violating the statute and asked

for a response using specific and direct examples. Defendants failed or declined to do this and failed or declined to even address the MHPAEA in its responses to Plaintiffs' appeals.

128. These MHPAEA violations by Defendants are breaches of fiduciary duty and gives Plaintiffs the right to obtain appropriate equitable remedies as provided under 29 U.S.C. § 1132(a)(3) including, but not limited to:

(a) A declaration that the actions of Defendants violate the MHPAEA;

(b) An injunction ordering Defendants to cease violating the MHPAEA and requiring compliance with the statute;

(c) An Order requiring the reformation of the terms of the Plan and the medical necessity criteria utilized by Defendants to interpret and apply the terms of the Plan to ensure compliance with the MHPAEA;

(d) An Order requiring disgorgement of funds obtained or retained by Defendants as a result of their violations of the MHPAEA;

(e) An Order requiring an accounting by Defendants of the funds wrongly withheld by each Defendant from participants and beneficiaries of the Plan as a result of Defendants' violations of the MHPAEA;

(f) An Order based on the equitable remedy of surcharge requiring Defendants to provide payment to Plaintiff as make-whole relief for their loss;

(g) An Order equitably estopping Defendants from denying Plaintiff's claims in violation of the MHPAEA; and

(h) An Order providing restitution from Defendants to Plaintiff for their loss arising out of Defendants' violations of the MHPAEA and unjust enrichment.

129. In addition, Plaintiffs are entitled to an award of pre-judgment interest and attorney fees and costs pursuant to 29 U.S.C. § 1132(g).

WHEREFORE, Plaintiffs seek relief as follows:

1. Judgment in the total amount Plaintiffs incurred for J.Z.'s treatment at True North, Polaris, and Optimum;
2. Pre- and post-judgment interest to the date of payment;
3. Appropriate equitable relief under 29 U.S.C. § 1132(a)(3) as outlined under Plaintiffs' Second Cause of Action;
4. Recoverable fees and costs incurred pursuant to 29 U.S.C. § 1132(g); and
5. For such further relief as the Court deems just and proper.

DATED this 20th day of August, 2026.

/s/ *Flynn Ezra Beckman*
Flynn Ezra Beckman, (NY Reg. No. 6215545)
flynn.beckman@chrisjen.com
CHRISTENSEN & JENSEN P.C.
257 East 200 South Suite 1100
Salt Lake City, Utah 84111
Telephone: (801) 323-5000
Facsimile: (801) 355-3472

*Attorney for Plaintiff*

County of Plaintiff's Residence:
New York, NY